UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TARYN MURPHY and CHRIS LANDON, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 3:10-cv-0530 |
| v. ) | Judge Aleta A. Trauger |
| ) | Magistrate Judge Knowles |
| SERGY LAZAREV, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the court is the defendant's Motion to Dismiss (Docket No. 39), which moved the court to dismiss the claims pursuant to Fed. R. Civ. P. 12(b)(6) or to transfer venue of the case pursuant to Fed. R. Civ. P. 12(b)(3). The plaintiffs filed a Response in opposition to the motion (Docket No. 45), supported by the Declaration of Taryn Murphy (Docket No. 46) and the Affidavit of Ekaterina S. Canes (Docket No. 47), which referenced materials outside of the pleadings. Pursuant to Fed. R. Civ. 12(d), the court therefore treated the motion as a motion for summary judgment and granted the parties additional time to file supplemental materials. (Docket No. 48.) The defendant accordingly filed a Supplemental Memorandum of Law (Docket No. 49) supported by three declarations (Docket Nos. 50 (Pedchenko Declaration), 51 (Mikhailenko Declaration), and 52 (Lazarev Declaration)).[1] For the reasons stated herein, summary judgment will be granted to the defendant.

---

[1] Notwithstanding their opportunity to do so, the plaintiffs did not file any additional materials.

1

# BACKGROUND[2]

Plaintiffs Taryn Murphy and Chris Landon are United States citizens who copyrighted the lyrics and music of the song "Almost Sorry" (hereinafter, *Almost Sorry*). The plaintiffs claim that, in November 2006, they orally agreed to license *Almost Sorry* to Style Records, Ltd. ("Style Records"), a Cyprus corporation with a principal place of business in Moscow, Russia. (Docket No. 31, First Am. Compl. ¶ 6.) At an unspecified point in "mid-2007," (*id.*), the plaintiffs claim that they entered into a written licensing agreement with Style Records ("Licensing Contract") ( Docket No. 1, Compl., Ex. 2).[3]

The Licensing Contract granted Style Records a license to utilize *Almost Sorry* for five years and the right to grant sublicenses to Russian musician Sergey Lazarev specifically and other artists generally.[4] In return for receiving the license, Style Records agreed to pay periodic royalties to the plaintiffs reflecting a percentage of "income received from [*Almost Sorry*]," towards which Style Records agreed to pay a $4,000 advance. The agreement, which by its own

---

[2] Unless otherwise noted, the court relies on the parties' affidavits and draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Brown v. United States*, 583 F.3d 916, 919 (6th Cir. 2009).

[3] The plaintiffs' First Amended Complaint, which is the operative complaint, references several exhibits, but no exhibits are attached. Those exhibits appear to correspond to several exhibits attached to the original Complaint, which the court will treat as incorporated by reference into the First Amended Complaint. The version of the Licensing Contract filed by the plaintiffs is unsigned and contains the date "November 20, 2006," which does not correspond to the unspecified date in "mid-2007" when the plaintiffs claim the contract was executed. At any rate, the defendant has not challenged the authenticity of the version of the Licensing Contract relied upon by the plaintiffs. Accordingly, for purposes of the pending motion only, the court will assume that the Licensing Contract was in fact executed in mid-2007 and that it contained the language referenced in the version attached to the original Complaint.

[4] Sergey Lazarev is incorrectly identified in the First Amended Complaint as "Sergy Lazarev."

terms is governed by the laws of the Russian Federation,[5] specifies that the parties must attempt to resolve any disputes related to the agreement through negotiation before filing suit and that the parties would adjudicate any disputes "at the Licensee's location." The Licensing Contract contains signature blocks for the plaintiffs and Style Records, who are defined as the "Parties."

On April 15, 2005, Lazarev entered into a producer's agreement ("Producer's Agreement") with Style Records, pursuant to which Style Records agreed to obtain licenses for musical works and to pay royalties to Lazarev to use those works in his performances and recordings.[6] After Style Records obtained the license to *Almost Sorry* in mid-2007, it sublicensed the song to Lazarev, who recorded it. Since that time, the song has become popular in Russia and Lazarev has performed, recorded, and/or marketed it in various formats, including on his own website. In 2010, Style Records released an album containing a version of *Almost Sorry* performed by Lazarev.

Lazarev avers that he has only been entitled to receive two forms of compensation for using the work. First, under the Producer's Agreement, Style Records agreed to pay him royalties for its commercial exploitation of his recordings of *Almost Sorry*. However, he avers that Style Records never actually paid him any royalties. Second, Lazarev was entitled to receive income from his public performances of *Almost Sorry*.

---

[5]The relevant provisions of Russian law are codified in the Grazhdandskii Kodeks Rossiiskoi Federatsii [GK RF] [Civil Code] (Russ.). Hereinafter, the court will refer to the GK RF as the "Russian Civil Code," identifying the relevant articles as "Article XXX."

[6]Lazarev entered into a supplemental producer's agreement with Style Records in September 2007. For purposes of the motion, it does not appear that the supplemental agreement differs in any relevant respect from the original Producer's Agreement. For simplicity, the court will refer to the contractual basis for the relationship between Lazarev and Style Records from April 2005 forward as the "Producer's Agreement."

3

With respect to the Licensing Contract between the plaintiffs and Style Records, the plaintiffs aver that Style Records did not pay the full amount of royalties owed. Style Records paid the initial advance of $4,000, but, despite the song's popularity in Russia, the plaintiffs did not receive any subsequent royalty payments for the Russian version of the song.[7] Between November 2008 and July 2009, the plaintiffs raised concerns about the lack of royalty payments with a contact person at Style Records, to no avail. After months of offering excuses for Style Records' failure to pay royalties, that contact person abruptly wrote that he was leaving the company, promised to forward their concerns to Style Records' "legal team," and provided the plaintiffs with no alternate contact person. Style Records did not contact the plaintiffs at any point thereafter.

Lazarev has continued to perform and market the song *Almost Sorry*, claiming that he has a valid sublicense to do so.

## PROCEDURAL HISTORY

The plaintiffs originally filed suit against both Lazarev and Style Records on May 28, 2010, alleging claims for breach of contract against Style Records, copyright violations under United States federal law (hereinafter, "federal law") against both Style Records and Lazarev, violation of Russian copyright law against Style Records and Lazarev, and intentional misrepresentation against Style Records.

---

[7]With respect to the English version of *Almost Sorry*, the plaintiffs received $1,639.09 in royalty payments from BMI, a United States-based organization that collects and disburses royalty payments. (Murphy Decl. ¶ 18.) It is not clear from the Murphy Declaration whether the plaintiffs are alleging that BMI made these payments on behalf of Style Records. At any rate, for purposes of this motion, the court assumes that these reflect only partial payments with respect to the English version of *Almost Sorry*.

4

After a series of extensions to effectuate service of process on Lazarev and Style Records, Lazarev filed a letter responding to the Complaint on January 10, 2010. (Docket No. 16.) On May 4, 2011, Lazarev filed what appears to be an identical letter responding to the Complaint.[8] (Docket No. 20.) It does not appear that any further activity took place in the case until February 2012, when the court received a call from plaintiffs' counsel, inquiring about the trial date. (Docket No. 22.) On February 14, 2012, the court ordered the plaintiffs to file notice as to whether they intended to proceed against Style Records, which had never been served with process. (Docket No. 22.) On February 22, 2012, without explanation, the plaintiffs voluntarily dismissed Style Records without prejudice. (Docket No. 24.)

On April 16, 2012, with leave of court, the plaintiffs filed a First Amended Complaint (Docket No. 31) "to make it abundantly clear" that they were seeking to recover for continued alleged copyright violations by Lazarev (Docket No. 28). The First Amended Complaint added a claim against Lazarev for breach of contract.

## SUMMARY JUDGMENT STANDARD

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2011). At the summary judgment stage, the moving party bears the initial burden of identifying those parts of the record that demonstrate the absence of any genuine issue of material fact. *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). However, if the moving party seeks summary judgment on an issue for which it does not

---

[8] Both letters were docketed by the Clerk as "Answers."

5

bear the burden of proof at trial, the moving party may meet its burden by showing that there is an absence of evidence to support the non-moving party's case. *Id.* (citing *Celotex*, 477 U.S. at 325). "When the moving party has carried this burden, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).) The non-moving party also may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial. *Id.*

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Moldowan*, 578 F.3d at 374 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the nonmoving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita*, 475 U.S. at 587). But "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient," *Moldowan*, 578 F.3d at 374 (quoting *Anderson*, 477 U.S. at 252), and the non-movant's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249. An issue of fact is "genuine" only if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Matsushita*, 475 U.S. at 587).

Also, under Fed. R. Civ. P. 44.1, in determining foreign law, "the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible the Federal Rules of Evidence. The court's determination must be treated as a ruling

6

on a question of law." *See Tschira v. Willingham*, 135 F.3d 1077, 1084 (6th Cir. 1998) (in construing meaning of particular word in contract written in German, relying on English translations of German law and presentation of expert testimony on meaning of word); *McGinnis v. Taitano*, 3 F. Supp. 2d 767, 770-772 (W.D. Ky. 1998) (in determining German law concerning collateral source rule, relying on German Civil Code and its commentary, as well as secondary treatises concerning German law). Here, the parties have filed translations of relevant portions of the Russian Civil Code. (*See, e.g.*, Docket No. 40, Attachment A.)[9]

## ANALYSIS

I. **Motion to Transfer Venue**

For the reasons stated in Part II of this Section, Lazarev is not bound by or subject to the terms of the Licensing Contract entered into between the plaintiffs and Style Records. Thus, the venue provision in the Licensing Contract does not apply to the plaintiffs' claims against him. The court will therefore deny Lazarev's request to transfer venue.

II. **Breach of Contract**

It is undisputed that Lazarev never signed a contract with the plaintiffs – the Licensing Contract was between the plaintiffs and Style Records only. The plaintiffs have not articulated any viable alternative theory under Russian law pursuant to which Lazarev could be held liable to the plaintiffs under the Licensing Contract. Therefore, absent privity of contract and any viable alternative theory of contractual liability against Lazarev, the breach of contract claims

---

[9]In some instances, the parties have not relied on the same English translations of relevant portions of the Russian Civil Code. However, neither party has objected to the translations upon which the other party relies, nor do these differences appear to be material for purposes of the motion.

7

against Lazarev will be dismissed with prejudice. Because the breach of contract claims will be dismissed, the court need not reach Lazarev's argument that the plaintiffs failed to meet a condition precedent to filing suit under the Licensing Contract.

## III. Copyright Claims

The plaintiffs contend, *inter alia*, that Lazarev does not actually possess a valid sublicense, because (1) the Licensing Contract was never effective in the first place; (2) Style Records' failure to pay full royalties to the plaintiffs effectively rescinded the Licensing Contract and the associated license; and/or (3) Style Records went bankrupt at some point in or before the year 2010, thereby rescinding the Licensing Contract by operation of law.[10]

### A. The Licensing Contract Was Supported by Consideration

The plaintiffs argue that the Licensing Contract "never became effective" because of a lack of consideration. " (First Am. Compl. ¶ 23.) The plaintiffs' position, which does not cite to any Russian authority, improperly conflates consideration with performance. With respect to the Licensing Contract, it is undisputed that Style Records obligated itself to pay royalties to the plaintiffs, including a $4,000 cash advance. Style Records in fact paid the $4,000 advance to the plaintiffs, thereby partially performing its obligations. Therefore, whether or not Style Records paid the requisite royalties thereafter, there was consideration for the contract – *i.e.*, the promised royalty payments and an associated advance. Even if the plaintiffs are correct that they are in fact owed more royalties than they have received from Style Records, Style Records' failure to

---

[10]Although the plaintiffs only articulated the first of these three theories in the First Amended Complaint, Lazarev's Memorandum in support of his Motion for Summary Judgment argues that the license was never rescinded, thereby opening the door to the plaintiffs' additional theories as to why the license had been rescinded.

8

pay constitutes a failure to perform its obligations under the Licensing Contract, not a lack of consideration for the agreement itself.

Indeed, Russian law provides that, where a licensee of an artistic work fails to make promised royalty payments to the licensor, the licensor may withdraw from the license contract and demand the reimbursement of losses caused by the withdrawal. Russian Civil Code, Art. 1237. Implicit in that provision is the assumption that, until the licensor withdraws from a licensing agreement, the agreement is otherwise effective and enforceable, notwithstanding the licensor's failure to pay royalties. Here, the Licensing Contract was effective upon execution, and Russian law recognizes that Style Records' failure to perform thereunder provided the plaintiffs with a breach of contract action, not a basis for finding that the contract was unenforceable *ab initio*. Accordingly, the court finds that the plaintiffs initially conveyed an enforceable license to *Almost Sorry* through the Licensing Agreement.

### B. The Plaintiffs Did not Cancel the Licensing Agreement In Compliance With Russian Law.

The parties have identified only one source of Russian law concerning the default rules for withdrawing from an existing contract.[11] Under Article 450 of the Russian Civil Code, "the amendment or the cancellation of the contract shall be possible only by an agreement between the parties, unless otherwise stipulated by the present Code, by the other legal acts or by the contract." Furthermore, a contract may be amended or cancelled by a court decision, but "only (1) in case of an essential violation of the contract by the other party; or (2) in the other cases,

---

[11]To the extent the parties cite to legal authority other than Russian law concerning cancellation of the Licensing Contract, that authority is inapposite, because the Licensing Contract is governed by Russian law.

9

[as] stipulated by the present Code, by the other legal acts or by the contract." Russian Civil Code, Art. 450(2).

Here, the plaintiffs and Style Records did not agree to cancel the Licensing Contract (see Art. 450), nor, in the absence of such an agreement, did the plaintiffs file a claim to cancel the contract in an appropriate court of law (see Art. 450(2)).[12] Thus, the plaintiffs did not cancel the contract in compliance with the Russian Civil Code. The plaintiffs have not cited to any contrary Russian authority concerning the circumstances under which a party may cancel, revoke, or otherwise rescind a contract, nor have they articulated any other plausible interpretation of the Russian Civil Code provisions cited by the defendants. Thus, even if it were true that Style Records refused to pay the full amount of royalties owed to the plaintiffs, the court finds that the plaintiffs did not cancel the contract in compliance with applicable Russian law.[13]

### C. Revocation of the License by Operation of Law

The parties have submitted competing materials concerning whether Style Records is an active company. The Canes Affidavit, filed on behalf of the plaintiffs, claims that certain

---

[12]Pursuant to the forum selection clause in the Licensing Contract, any disputes concerning that agreement must be brought at Style Records' "location." The Licensing Contract does not specify whether that "location" is in Cyprus, where Style Records was incorporated, or in Russia, where Style Records apparently does business. At any rate, the plaintiffs did not file a claim in either jurisdiction to cancel the Licensing Agreement.

[13]Article 452 also provides that "[a] claim for the amendment or for cancellation of the contract may be filed by the party with the court only after it has received the refusal from the other party in response to its proposal to amend or to cancel the contract, or in case of its non-receipt of any response within the term, indicated in the proposal or fixed by the law or by the contract, and in the absence thereof . . . within a 30-day term." With respect to Lazarev, it does not appear that the plaintiffs complied with this provision either.

10

Russian media sources reported that Style Records went bankrupt at some point in or about the year 2010, but the affidavit does not attach any of these materials, nor does it provide a basis for the court to assess the reliability of the referenced hearsay media sources. The Mikhailenko Affidavit, filed on behalf of Lazarev, purports to attach records from the "Unified Register of Legal Entities" in Russia and the "Registrar of Companies of Cyprus" demonstrating that Style Records and its parent company remain "active."

The court need not determine whether and to what extent it may rely on the defendant's materials.[14] First, the plaintiffs' materials plainly do not establish that Style Records went bankrupt and/or is no longer a functioning company. Second, even if it were true that Style Records went bankrupt in 2010, the plaintiffs have not identified any Russian legal authority establishing that such a bankruptcy would have extinguished the Licensing Contract (and the associated license to *Almost Sorry*) by operation of law.

## SUMMARY

For the reasons stated herein, the court will deny the request to transfer venue, summary judgment will be granted to Lazarev, and the plaintiffs' claims against him will be dismissed with prejudice.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge

---

[14] The document from the Unified Register of Legal Entities is not translated into English, but appears to bear some sort of official seal. The Cyprian document is translated into English, but (a) contains what appear to be handwritten notations by Lazarev's counsel, and (b) does not appear to contain any type of official seal.

11