# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **TARYN MURPHY and CHRIS LANDON,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No. 3:10-cv-0530** |
| **v.** | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **SERGY LAZAREV,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Defendant Sergey Lazarev has filed a Motion for Summary Judgment (Docket No. 80), to which the plaintiffs filed a Response in opposition (Docket No. 90), and Lazarev filed a Reply (Docket No. 94). For the reasons stated herein, the Motion for Summary Judgment will be granted, and the plaintiffs' remaining claims will be dismissed with prejudice.

## BACKGROUND

Plaintiffs Taryn Murphy and Chris Landon co-authored a song called "Almost Sorry." (hereinafter, "*Almost Sorry*"), which they registered with the United States Copyright Office. Style Records is a Cyprian corporation with a principal place of business in Moscow, Russia, which operated as a music production company during the time frame relevant to this lawsuit. Lazarev is a Russian popular music artist. As explained herein, in 2007 and 2008, the plaintiffs entered into a series of three licensing agreements for *Almost Sorry*, two of which purported to license the song specifically to Style Records, and all three of which contemplated that Lazarev would record the song as a sub-licensee. For purposes of the instant Motion for Summary Judgment, the issue presented is whether Lazarev is liable to the plaintiffs for copyright

1

infringement under federal or Russian law for recording and/or exploiting *Almost Sorry*.

I.    **Procedural History**

The procedural history of this case informs the court's consideration of the Motion for Summary Judgment. Therefore, the court will detail the case history.

A.    **Original Complaint and Pre-Amended Complaint Developments**

On May 28, 2010, Murphy and Landon filed a Complaint against both Lazarev and Style Records. The Complaint alleged that the plaintiffs had licensed *Almost Sorry* to Style Records "orally on or about November 20, 2006" and had "executed the written Licensing Contract [] in mid-2007." (Compl. ¶ 7.) The Complaint attached an unsigned version of a licensing agreement with Style Records dated November 20, 2006. The Complaint alleged that Lazarev recorded *Almost Sorry* in both English and Russian and that the song became popular in Russia. The plaintiffs alleged that, notwithstanding its popularity, the plaintiffs had received insufficient royalty payments under their licensing agreement. Without identifying the precise relationships between themselves and Lazarev or between Lazarev and Style Records, the plaintiffs asserted causes of action against both Lazarev and Style Records for (1) breach of contract, (2) copyright infringement under 17 U.S.C.A. § 501 *et seq.*, and (3) the Russian Civil Code. The plaintiffs also asserted a separate claim against Style Records for intentional misrepresentation.

After filing the Complaint, the plaintiffs apparently attempted to effect service in Russia on both Lazarev and Style Records. The plaintiffs made successive requests for extensions of the early case management deadlines to effectuate service, which the court granted. (*See* Docket Nos. 5-6 and 10-13.) On January 10, 2011, Lazarev, acting *pro se*, filed a letter with the court, in which he (1) acknowledged receipt of the Summons, and (2) denied the substance of the

2

plaintiffs' allegations. (Docket No. 16.) As to the second point, Lazarev's letter stated that the plaintiffs had actually entered into a different licensing agreement with Style Records "on *November 1*, 2006," under which Lazarev was authorized to record and perform *Almost Sorry*. Lazarev stated that, at the time that the plaintiffs and Style Records entered into a licensing agreement, he (Lazarev) was acting under a separate "producer's agreement" with Style Records, pursuant to which Lazarev recorded and performed works for which Style Records had acquired licensing rights. Lazarev claimed that he was not personally responsible for making any royalty payments, responsibilities that were contractually required of Style Records (for commercial exploitation of the song's recordings) and his concert promotion companies (for public performances of the work). The letter was docketed as an "Answer."

On March 3, 2011, the Magistrate Judge entered a Scheduling Order, which set an August 29, 2011 discovery deadline, a September 29, 2011 dispositive motion deadline, and a "targeted" trial date of February 28, 2012. (Docket No. 18.) On May 5, 2011, still acting *pro se*, Lazarev filed another copy of the letter he had previously filed on January 11, 2011, which was again docketed as an "Answer" to the Complaint. (Docket No. 20.) Aside from that "Answer," the record contains no docket entries for the time period from March 3, 2011 (the date of the initial Scheduling Order) through February 14, 2012.

On February 14, 2012, the court received a call from plaintiffs' counsel inquiring about the February 28, 2012 "target" trial date set forth in the Scheduling Order. (Docket No. 22.) After receiving that telephone call, the court ascertained that the plaintiffs had never served Style Records, and accordingly ordered the plaintiffs to declare whether they intended to proceed against Style Records. (*Id.*) On February 22, 2012, without explanation, the plaintiffs

3

voluntarily dismissed Style Records from the case.  (Docket No. 24.)

**B.      The Amended Complaint and Lazarev's Motion to Dismiss**

On March 14, 2012, the plaintiffs sought leave to amend the Complaint to assert "continuing infringements" by Lazarev (the only remaining defendant), which the court granted on April 9, 2012.  (Docket No. 29.)  On April 16, 2012, the plaintiffs filed an Amended Complaint, which remains the operative pleading in this case.  (Docket No. 31.)

The Amended Complaint again alleges that the plaintiffs had "orally" entered into a November 20, 2006 licensing agreement with Style Records and that the plaintiffs had "executed the written Licensing Contract [] in mid-2007."  The Amended Complaint alleges that Lazarev infringed and has continued to infringe the plaintiffs' copyright interests in *Almost Sorry* by performing, selling, and promoting the work through various forms of media, in violation of both federal and Russian law.  The plaintiffs allege, *inter alia*, that "the purported Licensing Contract between them and Style Records is null and void and never became effective due to the failure of consideration and, therefore, any use, exploitation, assignment, or other non-exempt use of the work constitutes an infringement of their rights pursuant to 17 U.S.C.A. § 502 *et seq.*"  (Am. Compl. ¶ 23.)

On May 16, 2012, counsel entered appearances on behalf of Lazarev (Docket Nos. 34-35), and received, over the plaintiffs' objection, both an extension of time to respond to the Amended Complaint and an extension of all pretrial deadlines (Docket Nos. 36-38).  The court reopened discovery – which apparently neither party had formally conducted to that point, notwithstanding the prior Scheduling Order – and reset all of the case management deadlines. (Docket No. 38.)

4

In compliance with the revised deadlines, Lazarev timely filed a Motion to Dismiss (Docket No. 39), to which the plaintiffs filed an opposition that relied upon sworn materials outside the Amended Complaint (Docket Nos. 45-47). After the court exercised its discretion to treat the Motion to Dismiss as a Motion for Summary Judgment under Rule 56, the court granted the parties an opportunity to file any other materials they considered pertinent to the motion. (Docket No. 48.) Lazarev filed a supplemental Memorandum of Law (Docket No. 49), the Declaration of Alexander Pedchenko (Docket No. 50) (attaching payment records), the Declaration of Ilya Mikhailenko (Docket No. 51) (attaching information related to the corporate status of Style Records), and the Declaration of Sergey Lazarev (Docket No. 52), which attached, *inter alia*, English translations of excerpts from Lazarev's initial producer's agreements with Style Records, a Russian translation of a supplemental producer's agreement, a signed version of the licensing agreement between the plaintiffs and Style Records dated November 1, 2006, payment records in Russian, and copyright registration records in Russian. Notwithstanding their opportunity to do so, the plaintiffs did not file any additional materials.

The court initially granted Lazarev's Motion to Dismiss. (Docket Nos. 57-58.) With respect to the breach of contract claim against Lazarev, the court found that the plaintiffs had no contract with Lazarev and had not asserted any viable alternative basis for contractual liability against Lazarev, thereby meriting judgment on the contract claim. With respect to the copyright claims, the plaintiffs asserted three theories of liability: (1) the licensing agreement(s) between the plaintiffs and Style Records were never effective because of a lack of consideration; (2) Style Records' failure to pay full royalties to the plaintiffs effectively rescinded the licensing contract and the associated license; and/or (3) Style Records went bankrupt at some point in or before the

year 2011, thereby rescinding the license by operation of law. The court initially rejected all three of these theories. First, the court found that the contract was supported by consideration, because the evidence indicated that the plaintiffs and Style Records had agreed to exchange things of value and, moreover, because the evidence showed that the plaintiffs had received the promised advance under the agreement dated November 20, 2006. Second, the court found that the plaintiffs had failed to comply with applicable Russian law concerning the rescission of contracts.[1] Third, the court found that(a) the plaintiffs had failed to present evidence rebutting the defendants' evidence that Style Records remained an active company, and (b) even assuming Style Records went bankrupt, the plaintiffs had not shown why such a bankruptcy would have extinguished the license to Style Records by operation of law.

### C. Motion to Alter or Amend

On April 19, 2012, the plaintiffs filed a Partial Motion to Alter or Amend Judgment under Fed. R. Civ. P. 59 (Docket No. 64), seeking reconsideration only with respect to the copyright claims. In support of their motion, the plaintiffs filed complete translations of certain records for which the defendants had previously produced only partial translations.

The plaintiffs argued, for the first time, that the licensing agreement dated November 20, 2006 was for a five-year term and, therefore, had expired by its terms by November 20, 2011.[2] Second, based on the complete translations of the producers' agreements between Lazarev and

---

[1]Although Russian law permitted the plaintiffs to file an action in Russia to rescind the contract, the plaintiffs did not exercise that right. Notably, even after this court's finding to that effect on August 22, 2012, the plaintiffs still made no attempt to rescind the licensing contract.

[2]In response to this argument, Lazarev argued that the agreement expired in "mid-2012," based on the plaintiffs' Amended Complaint allegations that the agreement was actually signed in "mid-2007."

6

Style Records, which did not specifically reference *Almost Sorry*, the plaintiffs argued that the producers' agreements did not convey a valid sub-license to Lazarev in the first place.[3]

After admonishing the parties for presenting incomplete and/or inconsistent translations of relevant records, the court examined the merits of the plaintiffs' arguments and found several ambiguities in the supplemented record that merited discovery. In particular, the court noted that the relationship between the November 1, 2006 agreement (which contained no time limitation) and the November 20, 2006 agreement (which contained a five-year time limitation) was unclear. The court also observed that it was unclear when those agreements became operative. Although the court expressed displeasure with plaintiffs' counsel's failure to present these materials and arguments to the court's attention earlier, the court found that it would be unjust to grant summary judgment on the copyright claims without the benefit of a complete factual record and a more thorough understanding of the relevant contractual relationships, including the nature and scope of Lazarev's sub-licensing relationship with Style Records. The court therefore reconsidered its decision with respect to the copyright claims. (Docket Nos. 69-70.)

### D. The Motion for Summary Judgment

On September 11, 2013, Lazarev filed the instant Motion for Summary Judgment. In support of that motion, he has filed (1) the Stipulation of Sergey Lazarev, which attaches English and/or Russian translations of relevant documents that the parties have stipulated are authentic, admissible, and properly translated (Docket No. 81), (2) the Declaration of Alexei Smirnow, which attaches copies of English translations of certain records attached to the Lazarev

---

[3]Based on Lazarev's representations about the terms of the producers' agreements, the court had assumed that those agreements explicitly referenced *Almost Sorry*.

7

Declaration (Docket No. 82),[4] (3) the Declaration of Sergey Lazarev (Docket No. 85), which attached copies of communications between Lazarev and the Russian Authors' Society ("RES"), (4) the Declaration of Ilya Mikhailenko (Docket No.84 (attaching same); (5) a Notice of Filing (Docket No. 85), which attaches copies of the transcripts and associated exhibits for the depositions of Lazarev, Landon, and Murphy; (6) a Statement of Undisputed Material Facts ("Lazarev's SUMF") (Docket No. 86), and (7) a Memorandum of Law (Docket No. 87). Lazarev has also incorporated by reference the legal and factual materials previously filed in support of his converted Rule 12 motion.

In support of their Response in opposition to the Motion for Summary Judgment, the plaintiffs have filed (1) a Memorandum of Law (Docket No. 91), (2) a Response to Lazarev's SUMF, and (3) the Declaration of Taryn Murphy (Docket No. 93).[5] The plaintiffs did not file their own statement of additional undisputed material facts.

In opposition to the Motion for Summary Judgment, the plaintiffs argue that (1) Lazarev waived his "license" and "sub-license" defenses by failing to file an Answer to the Amended Complaint; (2) Lazarev did not have a sub-license to use *Almost Sorry before* 2008, (3) the licensing agreements with Style Records were void because the plaintiffs never received a copy of those agreements signed by Style Records; and/or (4) Lazarev's sub-license expired in 2009,

---

[4]As best the court can discern, it appears that Smirnov translated the records and that those are the translations attached to the Lazarev Stipulation. At any rate, the court will rely on the stipulated versions of the records attached to the Lazarev Stipulation.

[5]The plaintiffs' Memorandum is only four pages long and largely fails to address Lazarev's arguments. Furthermore, with the exception of the plaintiffs' meritless waiver argument, the Memorandum fails to cite any legal authority, apart from one reference to a single provision of Russian contract law.

8

meaning that any exploitation by him of *Almost Sorry* after that date was unlawful.[6]

## II.    Facts

Unless otherwise noted, the facts are drawn from Lazarev's SUMF (taking into account the plaintiffs' responses thereto) and the evidentiary materials filed by the parties, including, *inter alia*, stipulated translations of Russian records.  The court draws all reasonable inferences in favor of the plaintiffs.

### A.    Lazarev's Producer's Agreements

On April 14, 2005, Lazarev entered into a producer's agreement with Style Records ("Producer's Agreement") (Docket No. 81, Ex. 9 (English translation)).  Through the Producer's Agreement, Style Records obtained the exclusive right to exploit Lazarev's performances and recordings for the life of the relevant copyrights.[7]  Style Records also acquired the right to organize Lazarev's concert activity.  In return for receiving these rights, Style Records agreed to pay Lazarev royalties for the exploitation of his performances, subject to the recoupment of expenses.

In most relevant part, the Producer's Agreement obligated Style Records to sign "authors' agreements" with musical authors (whose works Lazarev would record and perform) and "to conduct payments for use" of the works as provided in the Producer's Agreement (*i.e.*, to pay the authors for the use of their work).  (*Id.* ¶ 2.2.)  The agreement also required Style Records to

---

[6] As explained in the court's analysis herein, the defendants in their Reply justifiably complain that at least some of these liability theories are new and/or inconsistent with the plaintiffs' allegations and previous positions in the case.

[7] It appears that the agreement was designed to create an exclusive relationship between Style Records and Lazarev for the production, sale, and performance of three music albums to be recorded by Lazarev.  (Producer's Agreement ¶ 2.2.)

9

provide a production budget for specific production periods, from which Style Records would deduct certain expenses, including, *inter alia*, "remuneration to the authors of music and lyrics of Compositions (fixed and/or royalties)." (*Id.* ¶ 9.5.) Finally, although not discussed by the parties here, the Producer's Agreement also required Style Records to "sign an agreement" to retain "Zorina Anna" as "Artist's Manager." (*Id.* ¶ 2.5.)

The original term of the Producer's Agreement ran for three years from April 14, 2005, with the potential for extensions not exceeding a total term of four years. (*Id.* ¶ 3.) During that time frame, Lazarev recorded *Almost Sorry*. On September 7, 2009, the date that the Producer's Agreement expired,[8] Lazarev and Style Records entered into a supplemental producer's agreement ("Supplemental Producer's Agreement"). In the Supplemental Producer's Agreement, Style Records granted to Lazarev the right to use and perform music to which Style Records had conveyed rights (*i.e.*, valid sub-licenses) during the term of the original Producer's Agreement.

**B.      Plaintiffs' Agreements to License *Almost Sorry***

1.      Sub-Publisher's Agreement with Levant & Partners

At some point in 2007, either Murphy or Murphy's mother pitched *Almost Sorry* to a woman named Anna Zorina, who purported to express interest in the work on behalf of Style Records and Lazarev.[9] According to Murphy, and consistent with the terms of the Producer's

---

[8]It is not clear from the record why the agreement was set to expire on September 7, 2009, as opposed to some other date within the maximum four-year term set forth in the Producer's Agreement. Regardless, it is undisputed that the Producer's Agreement expired on that date.

[9]Although not addressed by the parties here, the court presumes that "Anna Zorina" is the "Zorina Anna" referred to as Lazarev's "Artist Manager" in the Producer's Agreement. (*See* Murphy Dep. at 26:24-27:1 ("I believe [Ms. Zorina] introduced herself as an agent of Style Records and a representative of Sergey Lazarev.").)

Agreement, Zorina was the "acting manager and representative of Sergey Lazarev." (Docket No. 93, Murphy Decl. ¶ 4.) Following those discussions, the plaintiffs, acting without consulting an attorney, entered into a so-styled "Sub-Publishing Agreement" with a law firm named "Levant & Partners."[10] (*See* Docket No. 81, Ex. 4.) This agreement purported to grant Levant & Partners certain rights to exploit *Almost Sorry* in Russia and in "all the countries in the world," for the period between January 1, 2007 and December 31, 2013. (*Id.*, Article I.) The Sub-Publishing Agreement purported to grant Levant & Partners (1) exclusive rights to exploit *Almost Sorry* in Russia, including the right to record, reproduce, and distribute the song, and (2) an exclusive right to exploit only Lazarev's performances of *Almost Sorry* in other countries – *i.e.*, leaving plaintiffs the right to license the song to other artists outside of Russia. The agreement contained no payment terms; however, according to Murphy, the plaintiffs accepted a $2,000 cash advance ($1,000 each) from Levant & Partners for entering into the agreement. (Murphy Dep. at 39:12-40:4; *see also* Docket No. 81, Ex. 7 (reflecting payment of $1,000 to Murphy on February 21, 2008).) The Sub-Publishing Agreement is dated January 1, 2007.[11]

In signing the Sub-Publisher's Agreement, the plaintiffs' understanding was that the contract authorized a recording of *Almost Sorry* to be made by Sergey Lazarev. (Murphy Dep. at

---

[10]According to its website, www.levantlegal.com, Levant & Partners appears to have an office in Moscow and includes patent litigation (but not copyright litigation) among its areas of practice. Aside from its inclusion as a named party to the Sub-Publishing Agreement in January 2007, Levant & Partners appears to have no other connection to this lawsuit. *See* http://www.levantlegal.com (last visited Dec. 10, 2013).

[11]The plaintiffs' response to Lazarev's SUMF does not dispute the defendants' representation that the Sub-Publishing Agreement was not signed until "late 2007." Having reviewed the underlying testimony, the court is not convinced that the record conclusively establishes that the plaintiffs signed the agreement after January 2007. At any rate, this ambiguity is immaterial.

29:1-3 ("Q: And what was your understanding of who would be using the song?  A: Sergey Lazarev.") and *id.* at 29:20:23 ("Q:  And your understanding was that the purpose of that contract was to allow a recording to be made of your song by Sergey Lazarev, correct?  A: Yes.").)  The plaintiffs have no understanding as to why Levant & Partners, a law firm with no apparent affiliation to the music industry, signed the agreement.  Furthermore, at the time, the plaintiffs had only a "vague" understanding that Style Records would be recording the song.[12]

At some point in early 2007, Lazarev recorded *Almost Sorry* at the "Brian Rawlings" recording studio in London, England.  (Murphy Decl. ¶ 5.)  On May 10, 2007, Lazarev's TV Show album, which contained that recording of *Almost Sorry*, was released in Russia and the Ukraine.  At an unspecified point in 2007, Lazarev also recorded a Russian version of *Almost Sorry*, which was first performed by Lazarev in November 2007.  From that point forward, the song was performed and aired multiple times.

2.  The First License Agreement

At some point in 2008, a representative of Style Records, Sergey Bobza, contacted Murphy directly and explained that the plaintiffs had entered into a "bad contract" with Zorina through Levant & Partners.  The Style Records representative told the plaintiffs that Levant & Partners was a law firm with no known affiliation to the music industry.  The representative also told Murphy that Zorina had recently been "terminated" by Style Records, but that, prior to her termination, she had induced authors to sign contracts (such as the Sub-Publishing Agreement)

_____

[12]*See* Murphy Dep. at 29:4-9.) ("Q: And did you have any understanding at that time that Style Records would be recording it?  A: It was vague.  I think other than the fact, to my recollection, she [Zorina] introduced herself as an agent of Style Records.  I don't think their name was mentioned for quite sometime [sic].")

12

without Style Records' knowledge, apparently out of "spite."[13]  Bobza recommended that "we try

to annul the contract [with Levant & Partners] due to breach of contract," and/or that "a letter be

sent to [Zorina] or to Levant & Partners."  (Murphy Dep. at 33:15-21.)  Notwithstanding these

suggested actions, the plaintiffs did not pursue a breach of contract action against Style Records

(at that time) and, to the best of Murphy's knowledge, no demand letter was sent to Zorina or

Levant & Partners.  At any rate, according to Murphy's testimony, the plaintiffs and Style

Records were seeking to "resolve the issue and become free and clear of this, at the same time

entering into what should have been considered a legitimate agreement with Style Records."  (*Id.*

at 34:15-21.)  As part of that effort, Bobza recommended that the plaintiffs and Style Records

enter into a license agreement.

 Notably, as of the time of her discussions in 2008 with Bobza, Murphy assumed

(correctly) that Lazarev had already recorded *Almost Sorry*.  She admits that, at that time, *the*

*plaintiffs had no objection to the exploitation of that recording*.  (*See* Murphy Dep. at 34:22-24

("Q: And at that time you had no objection to the exploitation of the recording, correct?  A:

That's right.")

 In February 2008, the plaintiffs, again acting without consulting an attorney, signed a

---

[13]At deposition, Murphy did not articulate precisely what Zorina was attempting to
accomplish through the Sub-Publishing Agreement, nor did Murphy seem to have any
knowledge concerning the precise relationship between and among Zorina, Levant & Partners,
and Style Records at the time of the Sub-Publishing Agreement.  It is not clear from the record
whether Style Records employed Zorina or had hired her as an independent contractor with
respect to Lazarev.  As best the court can discern, it may be that Zorina (whatever her business
relationship to Style Records) was attempting to "freeze out" Style Records from acquiring
licensing rights to certain songs and/or to procure business for herself by inducing authors to
enter into agreements with Levant & Partners instead.  Although the record contains some
ambiguities concerning Zorina's role in, and/or impact on, the series of licensing agreements,
those ambiguities are immaterial for the reasons explained herein.

two-page written license agreement provided to them by Style Records (hereinafter, "First License Agreement") (Docket No. 81, Ex. .  Before 2008, the plaintiffs had not had any direct contact with a legitimate representative of Style Records (*i.e.*, other than Zorina).  Nevertheless, the plaintiffs and Style Records dated the agreement November 1, 2006.[14]  The parties backdated the First License Agreement because "Style [Records] wanted to show that they had the rights to the song before [Zorina] since they believed her contract to be fraudulent or something of the like."  (Murphy Dep. at 35:25-36:7.)  In the backdated agreement, the plaintiffs gave "their permission to record [*Almost Sorry*], performed by Sergey Lazarev."  (First License Agreement at p. 1.)  The agreement stated that Style Records, which was under contract with Lazarev, "is intended to record the Composition in Sergey Lazarev's performance, *which is to be made at the Brian Rawling Production Studio*."  (*Id.*) (emphasis added.)  The plaintiffs agreed to "ensure [Style Records] (*as well as its licensees, affiliates and other third parties that will exploit the recording of the Composition*) with the possibility to receive without hindrance permissions to use the Composition . . . ."  (*Id.* (emphasis added.))  In return, Style Records agreed to pay the plaintiffs $3,000.  (*Id.* ¶ 4 and Appendix 1; *see also* Murphy Dep. at 40:5-21.)  The agreement contained no other terms specifying another form of payment for exploitation of the work, stated that it "takes effect from the moment of its signing," contained no time limitation, and did not include a choice of law provision.  Murphy testified that she was "not clear on exactly what [the contract] is or was."  (Murphy Dep. at 35:6-12.)

---

[14]The parties at times refer to this agreement as the "November 1, 2006 license agreement" and the agreement dated November 20, 2006 (discussed in the next section) as the "November 20, 2006 license agreement."  As explained, both agreements were *backdated* to a date well before Style Records and the plaintiffs actually had direct communications.  Therefore, to avoid confusion, the court will not refer to these agreements by the dates they bear.

14

The First License Agreement in the record contains signatures by the plaintiffs and by a representative of Style Records. The plaintiffs admit that they signed the agreement in February 2008. However, in support of her Motion for Summary Judgment, Murphy now avers that she and Landon "never received a sign [sic] copy of the signed Agreement from Style Records." (*Id.* ¶ 14.) Although the version of the agreement to which the parties have stipulated contains Style Records' signature, the record contains no indication as to when it was signed.[15]

The plaintiffs received and accepted the promised $3,000 cash advance ($1,500 each) under the First License Agreement. (*See* Docket No. 81, Ex. 7 (reflecting payment of $1,500 to Murphy by Style Records).)[16]

3.    Second License Agreement

In April 2008, a Style Records representative, Aleksey Kruzin, contacted the plaintiffs to request that they execute another license agreement for *Almost Sorry*. Kruzin sent the plaintiffs a copy of a licensing agreement that was more detailed than the First License Agreement. (Murphy Dep. at 43:19-24 ("Q: And this is the licensing contract that you just testified to that you ultimately signed? And that was circulated by Aleksey Kruzin? A: Yes.") In approximately May 2008, the plaintiffs signed this agreement, which the court will hereinafter refer to as the "Second License Agreement." (Docket No. 81, Ex. 6.)

Although the plaintiffs did not sign the Second License Agreement until May 2008, the

---

[15]Notably, the record contains no discovery of Style Records, notwithstanding the central importance of its actions to the plaintiffs' case.

[16]Eight days earlier, Murphy received a $1,000 wire transfer from Levant & Partners, presumably as payment for the Sub-Publishing Agreement with Levant & Partners. The plaintiffs have not attempted to explain why the advances from Levant & Partners and Style Records occurred so close together in time.

document bears the date "November 20, 2006." In most relevant part, the Second License Agreement purported to grant a license from the plaintiffs to Style Records for *Almost Sorry*, in return for a fixed advance of $4,000 and periodic royalty payments as a percentage of Style Records' profits from exploiting the song. The agreement also permitted Style Records to grant sub-licenses to *Almost Sorry*. The agreement, which specifically identified and defined Lazarev as the "Artist," granted Style Records the right to exploit *Almost Sorry* worldwide to the extent it was performed by Lazarev and the right to exploit *Almost Sorry* within Russia and certain other countries, to the extent it was performed by any artist other than Lazarev. The Second License Agreement specified that Russian law governs its interpretation. It also provided that the license term would be "five (5) years commencing on signature hereof." (*Id.* ¶ 1.4.)

The copy in the record contains signatures from Murphy, Landon, and a Style Records representative. The plaintiffs admit that they signed the agreement in May 2008. However, as with the First License Agreement, they aver that they did not receive a copy of the Second License Agreement signed by Style Records. (Murphy Decl. ¶ 16 ("We never received a sign [sic] Agreements [sic] back from Style Records.").)

The plaintiffs received and accepted the promised $4,000 advance ($2,000 each) under the Licensing Agreement. (*See* Docket No. 81, Ex. 7 (reflecting wire transfer of $2,000 to Murphy on May 21, 2008.).) They also received limited subsequent royalty payments, as explained in the next section.

### C. Exploitation of *Almost Sorry*

As the court understands the process, Style Records was obligated to remit royalties to the RAS, which would remit those payments to the United States performance rights organization

16

Broadcast Music, Inc. ("BMI"), which would in turn remit those payments to the plaintiffs. Through this process, the plaintiffs received and accepted a handful of royalty payments related to *Almost Sorry*. (*See* Docket No. 81, Ex. H.) The plaintiffs received and accepted at least the following payments: (1) $12.34 on January 19, 2010 (*id.* at p. 1); (2) $436.70 on June 28, 2010; (3) $1188.04 on September 23, 2011 (*id.* at pp.5-6); and (4) $217.30 on September 21, 2012.[17]

Viewing the facts in the light most favorable to the plaintiffs, Lazarev performed *Almost Sorry* through 2012 but has "tried to avoid" performing the song in 2013.

With respect to the song *Almost Sorry*, Lazarev only could receive two types of remuneration for its exploitation: (1) royalty payments from Style Records for Style Record's commercial exploitation of his recordings of the song, and (2) income from his public performances of the song. Lazarev never actually received any royalty payments from Style Records, because, according to Style Records, costs always exceeded the proceeds from sales of the albums containing *Almost Sorry*. The plaintiffs have not meaningfully disputed Lazarev's contention that, for his performances of *Almost Sorry*, it was the responsibility of the companies that organized his concerts to remit payments owed to other entities for those performances, which payments the concert organizers deducted before paying Lazarev.

The plaintiffs admit that they have never been a party to an agreement with Lazarev. The plaintiffs also admit that they have never attempted to retract, reject, renounce or withdraw the

---

[17]Although not addressed by the plaintiffs in their briefing, it appears from the record that the plaintiffs operated both individually and under the name "Songs of Taryn." For purposes of its analysis, the court has aggregated payments to "Songs of Taryn" with payments to the plaintiffs individually. In her original Declaration filed on June 15, 2012 (Docket No. 46), Murphy did the same, averring that she had received "a total of $1,639.09 in sporadic royalties" to that point. (*Id.* ¶ 18.) The royalty statements introduced by the defendants in support of the Motion for Summary Judgment include a subsequent royalty payment in September 2012.

First License Agreement or the Second License Agreement.

**ANALYSIS**

I.     **Waiver of Defenses**

The plaintiffs argue that Lazarev waived his affirmative defenses by failing to file a formal Answer to the Amended Complaint. The failure to raise an affirmative defense by responsive pleading does not always result in waiver. *Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997) (citing *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993)). The purpose of Rule 8(c) of the Federal Rules of Civil Procedure is to give the opposing party notice of the affirmative defense and a chance to respond. *Smith*, 117 F.3d at 969. Thus, if a plaintiff receives notice of an affirmative defense by some means other than the pleadings, the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice. *Moore*, 992 F.3d at 1445. As a consequence, a district court has discretion to assess whether, under the circumstances presented, a failure to comply with Rule 8(c) results in waiver. *See Smith*, 117 F.3d at 969 (district court did not abuse discretion in permitting defense to be raised in motion for summary judgment, where failure to raise defense earlier "did not result in suprise or unfair prejudice"); *Belluardo v. Cox Enters., Inc.*, 157 F. App'x 823, 830 (6th Cir. 2005) (finding that district court properly granted summary judgment on basis of *res judicata*, where "[t]he defendants raised their defense as soon as the defense became available," and holding that it "is inconsequential that they raised it in briefing a dispositive motion instead of in an amended pleading").

Here, the plaintiffs cannot claim surprise or unfair prejudice with respect to Lazarev's "license" and "sub-license" defenses. Lazarev first raised these defenses in his *pro se* letter to

18

the court on January 10, 2011, which attached the First License Agreement, the Producer's

Agreement, and the Supplemental Producer's Agreement. Lazarev filed the same letter again on

May 4, 2011. After the plaintiffs filed their Amended Complaint, Lazarev (by then represented

by counsel) filed a Motion to Dismiss that relied upon the license and sub-license defenses. The

court ruled upon these defenses in its opinion and orders concerning that motion and the

plaintiffs' Motion to Alter to Amend the Judgment. Furthermore, the court explicitly

reconsidered its dismissal of the copyright claims on the grounds that the plaintiffs should have

the opportunity to probe Lazarev's defenses concerning the licensing agreements and sub-

licensing agreements. The parties then conducted discovery on these issues and briefed them in

the context of the instant motion.

Under the circumstances, the court finds that, even though Lazarev did not formally file

an Answer to the Amended Complaint, the plaintiffs have been on notice of these defenses since

the early stages of this lawsuit and have had a full and fair opportunity to probe those defenses

through discovery and legal briefing to the court. Therefore, the purposes of Rule 8 have been

satisfied, and the court finds that Lazarev did not waive the defenses argued in support of his

Motion for Summary Judgment.

## II. Plaintiffs' Position with Respect to the Agreements at Issue

The plaintiffs' arguments throughout this litigation have been a moving target, and their

positions here are not consistent with previous representations to the court in crucial respects. In

their initial Complaint, the plaintiffs failed to reference the Levant & Partners Sub-License

Agreement or the First License Agreement, choosing to reference only the Second License

Agreement. With respect to that agreement, both the Complaint and the Amended Complaint

19

contained material misrepresentations and omissions concerning the underlying facts. Both pleadings alleged that the plaintiffs had "orally" agreed to the Second License Agreement on November 20, 2006 and that the plaintiffs had "executed" that contract in "mid-2007." In fact, as the plaintiffs now concede, they actually signed that agreement in mid-*2008* and had no oral agreement with Style Records before that time. In fact, the plaintiffs now admit that they and Style Records *backdated* the agreement to November 20, 2006 in an effort to indicate (falsely) that they had reached an agreement with Style Records before they entered into the Sub-Publishing Agreement with Levant & Partners.

The Complaint and Amended Complaint also contain an inherent tension: the plaintiffs argued, on the hand, that they were entitled to royalty payments under the Second License Contract, but, on the other hand, that the Second License Contract failed for lack of consideration. The plaintiffs' Complaint and Amended Complaint also allege that Lazarev had violated their copyright interests, without specifically explaining how. Granting a broad construction of the claims embedded within the penumbras of those pleadings, the court entertained the arguments raised by the plaintiffs in their briefs (with respect to the Motion to Dismiss and Motion to Alter or Amend) that (1) Lazarev's Producer's Agreement and Supplemental Producer's Agreement did not convey a sub-license to *Almost Sorry*; (2) the Second License Agreement failed for lack of consideration; (3) the Second License Agreement was void because Style Records had materially breached it; and (4) even if both the Second License Agreement and Lazarev's Production Agreements were otherwise valid, the Second License Agreement had expired by its own terms in November 2011, *after* which Lazarev allegedly had violated their copyright interests. At no time did the plaintiffs allege or argue that

20

Lazarev had violated their copyright interests *before* 2008.

In their Motion for Summary Judgment, the plaintiffs' position has shifted again. Their opposition brief now suggests that the Second License Agreement was never executed in the first place because the plaintiffs did not receive a copy signed by Style Records. This position contradicts the Complaint and Amended Complaint, in which the plaintiffs specifically alleged that they "executed" the Second License Agreement, pursuant to which they sought remuneration for (alleged) underpayment of royalties. Moreover, this position contradicts the plaintiffs' actual treatment of the agreement, pursuant to which they (1) accepted an advance payment from Style Records at the time they executed the agreement, (2) accepted royalty payments for *Almost Sorry* over a multi-year period, and (3) pursued further payment through multiple communications with Style Records, albeit unsuccessfully. Thus, the record showed mutual assent to the contract's validity and enforceability, as well as at least partial performance of its terms. Finally, it is significant that (1) the plaintiffs did not previously raise this argument to the court and (2) apparently did not explore the issue in discovery. Indeed, at deposition, the plaintiffs testified that they had executed the Second License Agreement in mid-2008, that they expected to receive royalty payments thereunder, and were suing at least in part because they had not received sufficient royalty payments.

Notwithstanding the court's concerns with the plaintiffs' evolving theories of liability, the court will address the plaintiffs' remaining arguments on their merits.

### B. Efficacy of the Agreements

The parties have not engaged in a choice of law analysis. However, the plaintiffs have not disputed that the construction of the contracts is governed by Russian law. In particular, the

21

Second License Agreement expressly states that it is governed by Russian law, and the plaintiffs do not argue that another jurisdiction's law should apply, let alone attempt to justify the application of law other than Russian law.

Under Russian law, a contract is "concluded by way of forwarding the offer (the proposal to conclude the contract) by one of the parties and of its acceptance (the acceptance of the offer) by the other party." Civil Code of the Russian Federation (hereinafter, "Russian Civil Code"), Art. 432 (English translation at Docket No. 87, Ex. 1). Furthermore, "[t]he contract shall be recognized as concluded at the moment, when the person, who has forwarded the offer, has obtained its acceptance." *Id.*, Art. 433. "[A]cceptance" is "the response of the person, to whom the offer has been addressed, about its being accepted," and the acceptance must be "full and unconditional." *Id.*, Art. 438(1). "The performance by the person, who has received an offer, of the actions, involved in complying with the terms of the contract, pointed out in the offer (the dispatch of commodities, the rendering of services, the performance of works, the payment of the corresponding amount of money, etc.), shall be regarded as the acceptance . . . ." *Id.*, Art. 438(2).

Here, the undisputed facts show that the First and Second License Agreement were both "concluded" (*i.e.*, validly executed) for at least two independently sufficient reasons. First, Style Records sent copies of the First and Second License Agreements to the plaintiffs for the plaintiffs' signature, thereby constituting "offers" under Russian law. Once the plaintiffs signed those offers, they became valid and enforceable. Second, even assuming *arguendo* that the plaintiffs' signatures alone were insufficient, the parties' performance of their obligations under the contract reflected mutual acceptance of the contracts' terms: the plaintiffs conveyed their

licensing rights in *Almost Sorry* to Style Records, which in turn made advance payments to the plaintiffs that the plaintiffs accepted. For either or both of these reasons, the court rejects the plaintiffs' argument that both licensing agreements were never executed.

As to the continuing validity of the First License Agreement, the court finds that the Second License Agreement superseded it. Under Russian law, parties to a contract "shall have the right to establish that the terms (provisions) of the contract, concluded by them, shall be applied to their relations, which have arisen before the conclusion of the contract." *Id.*, Art. 425(2). Here, the Second License Agreement contains terms that supplemented and/or amended terms of the First License Agreement. Therefore, the court construes the Second License Agreement as amending and/or supplementing their existing contractual relationship stemming from the First License Agreement. In most relevant part, because the Second License Agreement contains a specific time limitation of five years, the court finds that this limitation applies over the unspecified/unlimited time limitation of the First License Agreement. Thus, to the extent that Lazarev has argued that the First License Agreement conveyed a perpetual license to *Almost Sorry* to Style Records, the court rejects that argument.

### 3. The Duration of Luzarev's Sub-License

Abandoning their previous position, the plaintiffs now argue that Lazarev did not possess a valid sub-license *before* 2008.

Russian law sets forth basic principles of contract interpretation:

> While interpreting the terms of the contract, the court shall take into account the literal meaning of the words and expressions contained in it. The literal meaning of the terms of the contract in case of its being vague shall be identified by way of comparison with the other terms and with the meaning of the contract as a whole.

> If the rules, contained in the first part of the present Article, do not make it

23

possible to identify the content of the contract, the actual common will of the parties shall be found out with account for [sic] the purpose of the contract. All the corresponding circumstances, including the negotiations and the correspondence [] preceding the conclusion of the contract, the habitual practices in the relationships between the parties, the customs of the business turnover *and the subsequent behaviour of the parties* shall be taken into account.

Russian Civil Code, Art. 431.

As an initial matter, the plaintiffs in January 2007 first licensed *Almost Sorry*, via the Levant & Partners Sub-Publishing Agreement, with the express intention that Lazarev would record and perform the work. The plaintiffs accepted payment under the Levant & Partners Agreement, and Lazarev in fact recorded and performed *Almost Sorry* during the time frame in which that agreement was in effect.

In the First License Agreement with Style Records, the plaintiffs signed an agreement that "takes effect from the moment of its signing." (First License Agreement ¶ 5.) Although the document bears the date November 2006, the plaintiffs admit that they signed it in February 2008. Therefore, giving ¶ 5 of the contract its literal meaning, the contract went into effect in February 2008. Therefore, at a minimum, Style Records possessed a valid license to *Almost Sorry* as of February 2008.

As to the superseding Second License Agreement, the agreement similarly states that it takes effect "on signature hereof." (Second License Agreement ¶ 1.4.) Therefore, giving the Second License Agreement its plain meaning, the contract went into effect on the date it was signed – in May 2008 – *not* on the date on the face of the document. If the parties meant otherwise, they could have specified as much. Furthermore, and perhaps most significantly, the plaintiffs have not testified that they believed (reasonably or otherwise) that the agreement was meant to run fewer than five years from May 2008. Therefore, the court finds that the Second

Case 3:10-cv-00530   Document 95   Filed 12/10/13   Page 24 of 27 PageID #: 1118

License Agreement remained in effect from May 2008 through May 2013, when it expired. The plaintiffs' continued acceptance of royalty payments through at least September 2012 is consistent with this straightforward construction of the Second License Agreement. The plaintiffs accordingly have retained full rights to *Almost Sorry* since May 2013.[18]

Under the terms of the Producer's Agreement, Lazarev was obligated to record and perform music for which Style Records obtained rights during the agreement's duration. Because Style Records acquired the license to *Almost Sorry* before the expiration date of the original Producer's Agreement, Lazarev possessed a valid sub-license under the Producer's Agreement from at least May 2008 through September 7, 2009. Because Style Records and Lazarev agreed to extend the provisions of the Producer's Agreement in the Supplemental Producer's Agreement, Lazarev possessed a valid sub-license for the same time frame that Style Records possessed a valid license – *i.e.*, through May 2013.

The remaining question is whether, having found that the First License Agreement took effect in February 2008 and the superseding Second License Agreement took effect in May 2008, Lazarev violated the plaintiffs' copyright interests for his recordings and performances of *Almost Sorry* before 2008. The plaintiffs' argument is without merit for at least two reasons.

First, the Sub-Publishing Agreement with Levant & Partners specifically authorized Lazarev to record and perform *Almost Sorry*, which reflected the plaintiffs' understanding and

---

[18]The record contains no evidence that Lazarev performed or otherwise profited from *Almost Sorry* after May 2013. To the extent Lazarev or any other entity did so after May 2013, that activity would infringe on the plaintiffs' copyright interests in *Almost Sorry*. Again, the court construes the plaintiffs as having abandoned their argument – last raised in support of their Motion to Alter or Amend Judgment – that the license expired by its own terms on November 20, 2011. In so doing, the plaintiffs may have abandoned their only potentially viable basis for copyright liability against Lazarev.

intention at the time. The plaintiffs have testified that they had *no objection* to Lazarev's exploitation of the work prior to the plaintiffs' direct licensing agreements with Style Records in 2008. The plaintiffs could not have validly authorized Lazarev to record and perform *Almost Sorry*, only to sue him for copyright infringement for doing so. To the contrary, the plaintiffs did not pursue Lazarev for copyright infringement. Instead, well aware that Lazarev had recorded and performed the work before 2008, the plaintiffs sought to clarify their relationship with Style Records and Lazarev relative to *Almost Sorry* through licensing agreements under which Style Records made advance payments and was obligated to make further royalty payments.

Second, in the First and Second License Agreements, the plaintiffs specifically entered into agreements that they intended to govern Lazarev's recordings of *Almost Sorry* retroactive to November 2006. If the plaintiffs intended to pursue Lazarev for infringement, they would not have entered into licensing agreements that (1) specifically authorized Lazarev to continue to record and/or perform *Almost Sorry*, and (2) contained a date retroactive to November 2006, thereby covering Lazarev's previous activity. Again, under Russian law, parties are free to include contractual terms that apply to their relationship "before the conclusion of the contract." Here, the plaintiffs not only entered into the First License Agreement without raising any concern about Lazarev's pre-2008 activity with respect to *Almost Sorry*, but the plaintiffs in the Second License Agreement once again retroactively validated previous Lazarev's recordings and performances and otherwise clarified their relationship to Style Records and the terms of the license going forward.

The plaintiffs' only remaining argument is that Lazarev's sub-licensing agreement with Style Records expired in September 2009. The undisputed facts show that Lazarev entered into

26

a Supplemental Producer's Agreement in September 2009 that effectively extended the sub-licenses to songs for which Style Records had procured licenses, including *Almost Sorry*. Therefore, the court finds that Lazarev's Supplemental Producer's Agreement at least covered the time period through May 2013, when Style Records' license to *Almost Sorry* expired.

### C.     Summary

If the plaintiffs are correct that Style Records failed to pay them required royalties under the First and/or Second License Agreements, it is Style Records, not Lazarev, who owes them money. Perhaps if the plaintiffs had consulted with counsel before entering into a series of licensing agreements with (potentially unscrupulous) entities in a foreign country, the results would have been different. Be that as it may, the plaintiffs chose not to pursue Levant & Partners, Anna Zorina, or Style Records (whom they voluntarily dismissed from this lawsuit), in favor of pursuing Lazarev for copyright infringement. Certainly, the record strongly suggests that the plaintiffs did not receive all that they were owed by Style Records, a result that is unfortunate and unfair – but not Lazarev's responsibility. Of course, Lazarev must now be cognizant of the fact that he can no longer legally exploit *Almost Sorry* without reaching an agreement with the plaintiffs, given the expiration of the license and associated sub-license.

### CONCLUSION

For the reasons stated herein, Motion for Summary Judgment will be granted and Lazarev's claims will be dismissed with prejudice.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

27